## SIMPSON *v.* UNITED STATES.

APPEAL FROM THE COURT OF CLAIMS.

No. 31.   Argued October 27, 30, 1905.—Decided November 27, 1905.

In construing a contract with the Commissary General for supplies to posts in Cuba described at one place as "remote from the seacoast" and at another as "in the interior of the island;" *held,* that the two phrases meant the same thing and interpreted the word "interior," and that the contemporaneous construction of the Commissary General in refusing to take supplies for a post about eight miles from Havana and the camping ground for that city, that the contract applied only to posts remote from the seacoast, was correct. Also *held* that the written contract could not be extended to places not specified therein, by an indefinite oral agreement.

THE facts are stated in the opinion.

*Mr. A. A. Hoehling, Jr.,* with whom *Mr. John S. Blair* was on the brief, for appellant.

*Mr. Assistant Attorney General Pradt* and *Mr. P. M. Ashford,* Special Assistant Attorney, submitted for the United States.

MR. JUSTICE HOLMES delivered the opinion of the court.

This case arises upon a contract between the Commissary General of Subsistence and the claimant, by which it was agreed that the claimant should "deliver, to the commissaries of the United States troops stationed at such posts and camps as are situated in the interior of the island of Cuba at such prescribed hours on such days as, under the direction of their commanding officers they shall designate, such quantities of fresh beef . . . fit for immediate use . . . as from time to time they may require." The contract was to "be in force from the fifth day of January, 1899, to the thirtieth day of June, 1899, inclusive, or such less time for any post as the Commissary

General of Subsistence, U. S. Army, may direct." The claims made are two, one for a refusal to take beef needed for troops at Los Quemados, during certain parts of the contract time, and another for a refusal to take it at Havana and Matanzas. The Court of Claims found the facts and dismissed the petition. The reasons for the judgment were not given, but manifestly were that, on the facts stated, the claimant had no claim, as matter of law.

The claim in respect of the ports of Havana and Matanzas is based on a talk with the Commissary General before the contract was made, in which that officer stated that it was the purpose and intent of the department to cover the entire beef supply for the Island of Cuba by two contracts; one with Swift & Co., for refrigerated beef, slaughtered in the United States and delivered at points on the seacoast, the other with the claimant, for fresh beef, and that when Swift & Co. could not furnish beef the claimant's contract covered the entire island, both interior and seacoast. It is enough to say that the claim based on this conversation flies in the face of the contract, which confines the undertaking of the United States to beef for camps in the interior. The conversation is inadmissible, and if admitted would not be definite enough to change the plain meaning of the written words. *Brawley* v. *United States*, 96 U. S. 168, 173; *Simpson* v. *United States*, 172 U. S. 372, 397.

The claim in respect of Los Quemados raises two questions, or at least two were argued, one, whether the words "such quantities . . . as from time to time they may require," means such quantities as the commissaries may make requisition for, or such quantities as they may need, the other, whether the camp at Los Quemados was "situated in the interior of the island," within the true intent of the contract. Our opinion upon the latter will dispose of the case.

Los Quemados was the camp of the main body of troops in the vicinity of Havana, and about six or eight miles from that city. It was about two miles and a half from the beach of

Marianao, and connected with both points by rail. There was a refrigerator plant there which had been erected by Swift & Co., so that if the claimant regarded his contract as the supplement to that of Swift & Co., there was notice on the face of the earth that this point was supposed to be within their territory. The original advertisement for proposals, referred to by the claimant when he made his offer, spoke of "posts remote from the seacoast," a later one, also referred to, read "posts and camps in the interior of the island." Obviously the two phrases were used as meaning the same thing, and they may be considered in interpreting the word "interior" in the contract. *Bradley* v. *Washington, Alexandria and Georgetown Steam Packet Co.*, 13 Pet. 89, 101; *Stoops* v. *Smith,* 100 Massachusetts, 63, 65, 66; *Prouty* v. *Union Hardware Co.*, 176 Massachusetts, 155, 158; *Bank of New Zealand* v. *Simpson,* 1899–1900, App. Cas. 182; *Bruce* v. *Moon,* 57 So. Car. 60, 68, 69; 4 Wigmore, Evidence, § 2465. When performance of the contract began in January, 1899, beef was not ordered of the claimant for this camp. On the twenty-sixth he protested, but not on the ground that Los Quemados was situated in the interior of the island. His complaint was that he was to furnish all the fresh beef except that furnished under Swift & Co.'s contract. The reply from the acting Commissary General, and the local Chief Commissary, was that his contract embraced camps in the interior, "and not seacoast points," thus showing how the contract was construed at that time. He does not appear to have suggested a different view, although he seems to have kept on trying to get what orders he could. During January and February beef was purchased from third parties. On February 21, he was notified that commissaries throughout the island had been instructed to call on him to furnish fresh beef under his contract whenever Swift & Co. could not do so under theirs, and he furnished beef for Los Quemados for the first thirteen days of March and was paid for it. But it will be observed that this action again was not on the ground that Los Quemados was a camp in the interior.

While insufficient to modify the contract in the sense of the claim first discussed, it was based on the willingness which the claimant had shown to furnish beef to that greater extent. Pursuant to the notice it would seem that he furnished beef to various points upon the coast.

On March 13 the call upon the claimant was stopped and he again protested. On May 4, the Secretary of War decided that the camp at Quemados was an interior post, but called the attention of the Commissary Department to the clause in the contract providing that it should be in force from January 5 to June 30, 1899, or such less time for any post as the Commissary of Subsistence might direct. Accordingly the Commissary General notified the claimant that "the suspension of the delivery of fresh beef under your contract . . . is hereby made to cover the life of the contract in so far as it relates to the post of Quemados." The claimant, of course, relies upon this construction of his contract so far as it favors him, while he repudiates the attempt to terminate his rights under the last quoted clause. But this interpretation was after the event and was not accepted or acted upon otherwise than to give the notice just mentioned. As we have shown, the contemporary construction by the men on the spot was different, and seems to have been accepted by the claimant. Taking the instrument in connection with the facts that for camping purposes Quemados was Havana, and that, as between the parties, interior meant remote from the seacoast, we are of opinion that the United States did not promise to take beef from the claimant at that point.

*Judgment affirmed.*