THE CITY OF NEW YORK, Appellant, *v.* THE DELAWARE, LACKAWANNA AND WESTERN RAILROAD COMPANY et al., Respondents.

Municipal corporations — New York (city of) — ejectment action by city of New York to recover land under water of Hudson river and piers and structures thereon, erected by owner under contract with city authorized by section 822 of charter — when action cannot be maintained under provisions of section 71 declaring that land under water and other public property of the city of New York shall " be inalienable "— sections 71 and 822 read together and construed and section 822 held to be an exception to encourage the making of public improvements.

1. Section 822 of the charter of the city of New York (L. 1901, ch. 466) provides that the commissioner of docks, with the approval of the commissioners of the sinking fund, might license and permit private owners of any bulkheads, piers or water rights to make the necessary improvements thereon, so as to conform to the plans adopted by the department of docks, such improvements to be made by the owners under the supervision of the commissioner of docks, at the cost and expense of such owners, in the first instance, and upon such reasonable terms as to reimbursing said owners for such improvements, and as to wharfage and other riparian rights thereon and therefrom, as may be agreed upon. Defendants' grantor, who owned wharfage and other rights appurtenant to a bulkhead built into the Hudson river, and was also the owner of the right to maintain in perpetuity certain piers in the river, acting in pursuance of an agreement with the commissioner of docks, under said section 822, erected a new sea wall, filled in land behind it and constructed a new pier, in consideration of which it was covenanted by the city of New York, by its commissioner of

docks, that said owner should have certain rights of wharfage appurtenant to the new pier and the bulkhead, and that if the city should thereafter seek to acquire them by condemnation or purchase, it would pay the value of the bulkhead privileges and the value of the right and property in and to the pier.   The city now brings an action of ejectment against defendants, the successors in title of said pier owner, asking that the contract be disregarded as illegal.   This claim is made under section 71 of the charter of the city of New York, whereby " the rights of the city to its waterfront, ferries, wharf property, land under water, public buildings, wharves, docks, streets, avenues, parks, and all other public places are   *   *   *   declared to be inalienable."   This cannot be sustained.   Sections 71 and 822 must be read together and the general rule construed in the light of the exception.

2. Section 876 of the city charter has no application herein.   It is substantially a re-enactment of section 729 of the Consolidation Act (L. 1882, ch. 410) and though continued in the present charter, it is subject to the provisions of section 71, and hence is no longer to be construed as impliedly permitting the conveyance of land under water back of the exterior line.

*City of New York* v. *D., L. & W. R. R. Co.*, 206 App. Div. 228, affirmed.

(Argued January 15, 1924;  decided February 19, 1924.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered July 23, 1923, unanimously affirming a judgment in favor of defendants entered upon a verdict directed by the court.

*George P. Nicholson, Corporation Counsel (John F. O'Brien* and *Josiah A. Stover* of counsel), for appellant. The attempted alienation to Carroll of the rights appurtenant to the new pier and bulkhead was expressly prohibited by section 71 of the Greater New York charter. (*Williams* v. *Mayor, etc.,* 105 N. Y. 419; *Knickerbocker Ice Co.* v. *F. S. St. R. R. Co.,* 176 N. Y. 408; *Matter of City of New York,* 228 N. Y. 140.)   Section 876 of the Greater New York charter, when considered in relation to section 71 of the Greater New York charter, does not

tend even inferentially to empower the city to alienate rights in and to land under water situate within the exterior or pier-head line as established by the act of April 17, 1857 (Laws of 1857, chap. 763). The city's former power to convey its rights in and to lands under water situate inside that exterior line existed by virtue of its ancient charters and of many statutory enactments long prior to the time of the enactment of the statute from which the present section 876 of the charter is derived. That power continued many years subsequent to the enactment of such derivative legislation and was revoked, probably by virtue of section 102, chapter 335, Laws of 1873, but certainly by the enactment of section 71 of the charter (*Matter of City of New York*, 228 N. Y. 140, 152; *Mayor, etc., v. Hart*, 95 N. Y. 443; *Williams* v. *Mayor, etc.*, 105 N. Y. 419.) The agreement, when considered in relation to section 71 of the charter, cannot be sustained as an exercise of the powers conferred by section 822 of the charter. The agreement, license and permits authorized by section 822 relate to improvements by private owners upon " their " property prior to acquisition by the city. The intent of these two sections is that the city should acquire additional waterfront property and lands under water and keep what it already-owned in order that it should eventually own all waterfront property and lands under water and that until the final acquisition of private waterfront property by the city, private owners can, with the city's consent, make improvement upon " their " own property. (*Matter of Mayor, etc.*, 135 N. Y. 253; *Williams* v. *Mayor, etc.*, 105 N. Y. 419; *Kingsland* v. *Mayor, etc.*, 110 N. Y. 569; *Langdon* v. *Mayor, etc.*, 133 N. Y. 628; *Woerz* v. *Schumacher*, 161 N. Y. 530; *Matter of City of New York*, 227 N. Y. 119.)

*Austin J. McMahon, W. S. Jenney* and *J. L. Seager* for Delaware, Lackawanna and Western Railroad Com-

pany, respondent.   The grantees of Howard Carroll are entitled to possession of the premises for which the action is brought by virtue of said Carroll's title and rights as of December 4, 1903, prior to the execution of the agreement with the city and irrespective of any grants contained in said agreement.  (*Bedlow* v. *Stillwell*, 158 N. Y. 292; *Bedlow* v. *N. Y. F. Dry Dock Co.*, 112 N. Y. 263; *Bell* v. *City of N. Y.*, 77 App. Div. 437; *Burns Bros.* v. *City of New York*, 178 App. Div. 615; 232 N. Y. 523; *Appleby* v. *City of New York*, 199 App. Div. 539; *American Ice Co.* v. *City of New York*, 217. N. Y. 402; *People* v. *Commissioners*, 10 Hun, 207; *Smith* v. *Mayor, etc.*, 68 N. Y. 552; *Wetmore* v. *Atlantic W. L. Co.*, 37 Barb. 70; *Wetmore* v. *Brooklyn G. L. Co.*, 42 N. Y. 384.)   In considering the effect to be given to sections 71, 822 and 876 of the Greater New York charter, the history of the department of docks and the purposes of the said statutes should be considered.  (*People* v. *Mallory*, 46 How. Pr. 281; *Langdon* v. *Mayor, etc.*, 93 N. Y. 129; *Burns Bros.* v. *City of New York*, 178 App. Div. 615; 232 N. Y. 523.) The agreement of December 4, 1903, between the city of New York and Howard Carroll was in all respects valid.  (*Matter of City of New York*, 217 N. Y. 1; *Williams* v. *Mayor, etc.*, 105 N. Y. 419; *Bedlow* v. *Stillwell*, 158 N. Y. 292; *Bell* v. *City of New York*, 77 App. Div. 437; *Hayden* v. *Pierce*, 144 N. Y. 512; *Hoey* v. *Gilroy*, 129 N. Y. 132; *City of Poughkeepsie* v. *Quintard*, 136 N. Y. 275; *Wormer* v. *Brown*, 149 N. Y. 163.)

*Lyle H. Hall* for Baltimore and Ohio Railroad Company, respondent.

CARDOZO, J.   Plaintiff, the city of New York, sues to recover possession of a pier built into the North or Hudson river, known as "pier new No. 7," with the land under water below it.

In the year 1903 Howard Carroll was the owner of wharfage and other rights appurtenant to the bulkhead along the westerly side of West street for a distance of 298 feet 3 inches. He was also the owner of the right to maintain in perpetuity the piers described as old No. 6 and old No. 7. The site of pier old No. 6 is the same as that of pier new No. 7, except that the present pier is much longer and wider. The site of old No. 7 is now covered by water, the pier having been destroyed. By contract with the commissioner of docks, dated December 4, 1903, Mr. Carroll undertook to build out and widen West street, erecting a proper sea wall and filling in with solid filling the intervening space, to tear down pier old No. 7 and pier old No. 6, and to construct pier new No. 7 in conformity with the plan for the improvement of the water front of the city of New York which had been prepared and adopted by the municipality under the authority of statute. In return for all this the city of New York, by its commissioner of docks, granted to Mr. Carroll the rights of wharfage and cranage appurtenant to the new pier as well as those appurtenant to the bulkhead, and covenanted that if it should thereafter seek to acquire them by condemnation or purchase, it would pay the value of the bulkhead privileges and the value of the right and property in and to the pier. There is no denial that Mr. Carroll faithfully complied with this contract on his part, tearing down the old piers, building a new one, and constructing a marginal street, at very great expense. The defendant Delaware, Lackawanna and Western Railroad Company is his successor in title, and the other defendants are tenant and subtenant respectively. The city now says that the contract is to be disregarded as illegal, and that, without requital to the defendants, the judgment must restore possession of the land under water and all improvements thereon.

The statute invoked in support of this conclusion is section 71 of the charter of the city of New York, whereby

" the rights of the City in and to its waterfront, ferries, wharf property, land under water, public landings, wharves, docks, streets, avenues, parks, and all other public places are  *  *  *  declared to be inalienable " (cf. *Matter of City of New York*, 228 N. Y. 140). We have no thought to whittle down by artificial or nice construction this comprehensive declaration. On the other hand, in giving effect to it, we are not at liberty to disregard exceptions, if any, established by other sections of the charter, which equally with this one are to be respected and obeyed. The plaintiff's claim of right to treat the defendants' possession as the possession of a trespasser, and by action of ejectment to terminate it without requital, is met and overcome by section 822 of the charter, under the authority of which the contract now assailed was made. By that section the commissioner of docks, with the approval of the commissioners of the sinking fund, is authorized to acquire in the name and for the benefit of the city of New York, and either by purchase or by condemnation, any and all wharf property or appurtenant rights, not already owned by the city, and also such lands under water, or rights appurtenant thereto, as he shall deem necessary to be taken for the improvement of the waterfront. Already, under the direction of statute (L. 1870, ch. 137, § 99, as amended by L. 1871, ch. 574, § 6), a plan of improvement had been prepared by the department of docks as the plan to which all wharves, piers and bulkheads thereafter erected were required to conform. A policy had been initiated whereby the city would gradually succeed to the rights of private owners, and, succeeding thereto, would improve what would thus become its own in accordance with a carefully prepared scheme of symmetrical development (*Matter of City of New York*, 228 N. Y. 140, 150; *Kingsland* v. *Mayor, etc., of New York*, 110 N. Y. 569; *Matter of Mayor, etc., of New York*, 135 N. Y. 253, 262). The consummation of such a project, entailing enormous cost, might

be expected, however, to involve delay of many years. There was need that symmetrical development should not be so long postponed, and so, to expedite its coming, there was added to section 822 of the charter the following proviso: " Provided that said commissioner of docks, with the approval of the commissioners of the sinking fund, hereby is empowered to agree, license and permit private owners of any bulkheads, piers or water rights, to make the necessary improvements upon their bulkheads, piers or water rights, so as to conform to the plan already adopted by the department of docks, and approved by the commissioners of the sinking fund of the city of New York, as heretofore known and bounded, or to be hereafter adopted and approved, pursuant to this chapter, during the period which shall intervene prior to the extinguishment of such private ownership by the city of New York, such improvements to be made by such owners under the supervision of or by the commissioner of docks, as may be agreed upon, at the cost and expense of such private owners, in the first instance, and upon such reasonable terms as to reimbursing said private owners for such improvements, and as to wharfage and other riparian rights thereon and therefrom, as may be agreed upon."

The city makes the claim that when authority was thus conferred upon private owners to improve their bulkheads, piers or water rights, so as to conform to the city's plan, the meaning was that the improvements were not to extend beyond the lines of the bulkheads, piers or rights that belonged to them already. This would make the statute useless. The owners were not in need of any grant of power, if this and nothing more was meant. The argument is that owners were nervous or uncertain as to the extent of their authority, and that, without benefit to the city, the statute was adopted in the altruistic hope that their fears would be allayed. We cannot read that purpose either in the statute itself

or in its history and occasion.  On the contrary, its animating purpose was to enlist the co-operation of private owners by the promise of adequate reimbursement, in furtherance of a public improvement which would languish indefinitely without the aid of such a stimulus.  Owners were encouraged to tear down their old piers, which departed from the city's plan, and to substitute new ones in conformity thereto.  Whether the right of occupation which they obtained is to be classified as a franchise or an easement or a license, it is a right that was meant to persist until compensation had been made.  Sections 71 and 822 must thus be read together, and the general rule construed in the light of the exception.

In this action of ejectment, the defendants must prevail if they have the right of possession, without more.  We are not concerned at this time with the price to be paid for the termination of the right.  Whether such price is to be limited to the cost of the improvements and the value of the old pier rights, or is to include such additional value as would result from the permanent retention of pier rights in the larger structure, is a question not before us.  We are unwilling, even by remote suggestion, to forecast the proper answer.  The question before us here is whether the defendants may be dislodged, without payment of anything, after having gone into possession upon the promise made to their grantor that possession might be retained until payment should be made.  We think that against such an attempt to oust them without requital, section 822 of the charter is an insuperable barrier.

In the opinion at the Appellate Division, the defendants' right of possession is traced also to another section (§ 876), which states: "No grants of land under water shall be made by the board of aldermen of the city of New York, or by any officer, board, or department thereof, beyond the exterior lines of the city of New York, as

fixed by an act of the legislature, passed April seventeenth, 1857, entitled, ' an act to establish bulkhead and pier lines for the port of New York,' as amended by subsequent act, unless as expressly authorized by acts passed subsequent thereto.'' The prohibition of conveyances beyond the exterior line was thought by the Appellate Division to mean that conveyances were authorized if kept within the line. The inference might be permissible if it were not for section 71, which removes the subject from the field of inference by its sweeping declaration that rights in and upon the waterfront shall be inalienable thereafter. Section 876 is substantially a re-enactment of section 729 of the Consolidation Act (L. 1882, ch. 410), which in turn was derived from Laws of 1858, chapter 360. Section 71, on the other hand, came into being with the adoption of the Greater New York charter of 1897. With the enactment of section 71, the re-enactment of section 876 may have been an unnecessary precaution. Such vestiges are not uncommon when statutes are compiled. Section 876 survives as a prohibition, but as an inferential grant of power its authority has gone. An exception by implication stands, of course, upon a different basis from one reserved expressly, as under section 822.

The judgment should be affirmed with costs.

HISCOCK, Ch. J., POUND, ANDREWS and LEHMAN, JJ., concur; McLAUGHLIN and CRANE, JJ., not sitting.

Judgment affirmed.