**NOLTE et al. v. HUDSON NAV. CO. et al.**

(Circuit Court of Appeals, Second Circuit. December 6, 1926.)

No. 77.

1. **Evidence** ⚖️337—Report of city's chief engineer, stating that navigation company had maintained shed on old bulkhead, held evidence of that fact.

In action involving navigation company's right, under contract giving it such rights of wharfage and the like in a new bulkhead as it had had at an older one, report of city's chief engineer, stating that the company had had a shed on the older bulkhead, and recommending that it be given permission to build such a shed on the new, was evidence that company had so occupied the old bulkhead, being the report of an official in the course of his duties of matters within his personal knowledge, and which he was charged with the duty of ascertaining.

2. **Municipal corporations** ⚖️719(4)—Contract with city held intended to give navigation company right to maintain shed on new bulkhead.

Contract by which city, in consideration of certain work, gave navigation company such rights of wharfage and the like in a new bulkhead as it had had at an old one, held intended to give company right to maintain shed on new bulkhead, such as it had maintained on the old one.

3. **Contracts** ⚖️170(1)—Parties must abide by interpretation which they have placed on equivocal language and adhered to for many years.

When parties choose equivocal language, they must be content with the interpretation which they put on it immediately thereafter, and to which they continuously adhered for many years.

4. **Municipal corporations** ⚖️250—Rule of contemporaneous and subsequent construction of contract applies to municipalities.

The canon of contemporaneous and subsequent construction of a contract applies, not only to individuals, but also to municipalities.

5. **Municipal corporations** ⚖️719(4)—Contract held to preclude city from recovering for use of bulkhead by navigation company, irrespective of city's right to revoke license.

Where city, for valuable consideration, gave navigation company such rights in bulkhead as it had previously had in old bulkhead, including right to maintain shed thereon, held, such contract precluded city recovering for such use or occupation, irrespective of question whether occupation of old bulkhead was under a gratuitous, or even unlawful, license, such that city could at any time revoke it.

6. **Municipal corporations** ⚖️719(4)—Contract granting right to use bulkhead held within authority of board of docks.

Contract granting navigation company right to use bulkhead for valuable consideration held within authority of board of docks of New York City.

Appeal from the District Court of the United States for the Southern District of New York.

Creditors' bill by Elizabeth M. Nolte, as executrix, and others, against the Hudson Navigation Company and others, in which the City of New York filed a claim. From a judgment of the District Court, confirming the report of the special master disallowing claim, claimant appeals. Affirmed.

See, also, 13 F.(2d) 987.

Appeal from a decree of the District Court for the Southern District of New York,

confirming the report of a special master disallowing the appellant's claim against the appellee, a receiver appointed under a sequestration bill.

The main suit arose upon a creditors' bill to sequester and distribute the assets of the defendant through a receiver. The receiver advertised for claims; the city of New York filed the claim in suit, and the receiver rejected it. Thereupon the District Court referred the issues to a special master, who reported that the claim should be disallowed. This report the District Judge confirmed over the claimant's exceptions, and entered the decree from which this appeal was taken.

The case on the evidence was thus: The defendant's predecessor operated a line of steamers on the Hudson river, and had acquired for that purpose certain undisclosed rights in a pier and bulkhead on the waterfront near what is now Canal street in the city of New York. Between the west line of West street, the thoroughfare bordering the river, and the bulkhead line was a parcel of land at the west line of which was the bulkhead from which the pier extended into the water. This was the situation in 1898. In that year, in accordance with a general plan of improvement of long standing, the city made a contract with the defendant's predecessor, by which the bulkhead line was removed some 100 feet or more west, to a point 180 feet west of the west line of West street, and the company was given rights of wharfage and the like at the new bulkhead and in a new pier to be erected in place of the old one, longer and slightly wider. The consideration for this contract was the company's relinquishment of its rights in the existing bulkhead and pier, and its promise to fill in the land between the old and the new bulkhead line, and to build the new pier and bulkhead, and to pay rent for the additional length of the pier.

As the question at bar turns upon the interpretation to be given the new rights so acquired, it is necessary to quote from the contract. The city granted to the company "all the rights of wharfage, cranage, emoluments, and hereditaments appurtenant to all that bulkhead"—i. e., the new one—"when completed, on a line," etc. The habendum read as follows: "To have and to hold the said wharf property to its own use and behoof forever, in the same manner and same estate as said party hereto of the second part"—i. e., the company—"holds and enjoys at the date of this indenture, the wharfage, cranage, and other emoluments arising from the old bulkhead and pier subject to the payment hereinafter provided for," a payment not relevant here.

The company built the new pier and bulkhead, as prescribed, and made the necessary fill. It, or its successors in title, occupied the new premises from that time until the appointment of the receiver herein. In 1899, upon the filled-in land just east of the new bulkhead and at the base of the pier, the company built a shed, about 126 feet long, north and south, and 46 feet wide, east and west. This shed it and its successors have continuously occupied for the purposes of their business from that time on, without payment to, or demand from, the city for rent, or for use or occupation, until 1923. The claim at bar was for the reasonable value of this occupation for the six years preceding the filing of the claim herein.

The receiver put in evidence before the master a report to the board of docks, dated May 19, 1899, signed by the city's engineer in chief, which declared that the company was then building the new bulkhead, and that it had had a bulkhead shed on the earlier bulkhead, extending some 50 feet inshore. The report recommended that the request of the company (which was not otherwise proved) should be granted to build a shed of like size on the new filled land, on condition that, if the city acquired the property in the future, its value should not be "enhanced by the privilege given of erecting a bulkhead shed." The engineer made this recommendation, because he construed the contract of 1898 as intending to include this right among the rest conferred. On the same day the city's board of docks adopted a resolution giving permission to the company "to erect and maintain a shed along the bulkhead" of the prescribed dimensions, in accordance with plans to be drawn by the engineer. A condition was attached to this permission that the company should file an agreement with the board that, in case of condemnation, "no additional item of value shall be claimed * * * by reason of the erection of said shed." This condition was apparently never fulfilled.

The city argues that the contract of 1898 did not give to the company any right to build or maintain the new shed, and that the board of docks had no authority under the Constitution of the state of New York to grant a gratuitous license to occupy the city's property. Thus the license was no bar to a claim for use and occupation.

George P. Nicholson, of New York City (Isaac F. Cohen, of New York City, of counsel), for appellant.

Kenneth K. Mackenzie and Geller, Rol-

ston & Blanc, all of New York City (Mansfield Ferry, of New York City, John J. McManus, of Albany, N. Y., and Irving G. Idler, of New York City, of counsel), for appellees.

Before HOUGH, HAND, and MACK, Circuit Judges.

HAND, Circuit Judge (after stating the facts as above). [1] The case is barren of any evidence of the company's occupation before 1898, except for the report of the engineer. That, however, seems to us evidence of the truth of what it declares, though, of course, it was not a conclusive interpretation of the contract. It was the report of an official, made in the course of his duties, of matters which came under his personal knowledge, and which he was charged with the duty of ascertaining and reporting. Ellicott v. Pearl, 10 Pet. 413, 440, 441, 9 L. Ed. 475; Buckley v. U. S., 4 How. 251, 258, 11 L. Ed. 961; Evanston v. Gunn, 99 U. S. 660, 665–667, 25 L. Ed. 306; White v. U. S., 164 U. S. 100, 102–104, 17 S. Ct. 38, 41 L. Ed. 365; Ches. & Del. Canal Co. v. U. S. (C. C. A. 3) 240 F. 903, 153 C. C. A. 589; Wigmore, §§ 1630–1633.

[2] We may therefore start as a datum with the fact that in 1898 the company was in occupation of a shed of the same size and similarly situated, as respects the old pier, as that which it built in 1899, and which it has maintained ever since. It had occupied this old shed, either under some valid grant from the city, or by gratuitous license, which we may assume would have been no bar to an action for use and occupation, and which, indeed, may at the time have been an unlawful encroachment upon the city street. Although the city has the burden of proof, we shall for argument take as proved the second alternative in what we have to say.

The meaning of the contract of 1898 seems to us that, whatever rights the company had under its old occupation, it was to enjoy under the new. True, there is no apt language to include the maintenance of a shed upon the land inside the bulkhead; but there is equally none to exclude it. "Emoluments" "appurtenant" to the wharf is indeed a vague phrase, and was used because it was; the exact extent of what was granted was not known, and was not meant to be set out in detail. However, the habendum refers the future enjoyment to the earlier occupation, and by so doing measures the one by the other. That was a fair bargain, for, although the company got a little larger pier, it was compelled to do much expensive work, and would normally expect to reassume the same occupation that it had before it was disturbed. At any rate, this appears to us to be a possible and likely meaning to attach to language, purposely indefinite.

[3] However, we need not say that, if the words stood bare, as they did in 1898, we should feel obliged to construe them in this way. At least, when parties choose such equivocal language, they must be content with the interpretation which they put upon it immediately thereafter, and to which they continuously adhered for nearly 25 years. While the new pier and bulkhead were building, the company asserted its right under the contract to a new shed located relatively to the new bulkhead as the old shed was located relatively to the old bulkhead, and the city assented, not as the grant of a new right, but as something included within the old.

[4] Nobody read any other meaning into the words until this claim was filed, and everybody concerned acted on the assumption that the first interpretation had been right. The canon of contemporaneous and subsequent construction of a contract applies, not only to individuals, but also to municipalities, District of Columbia v. Gallaher, 124 U. S. 505, 8 S. Ct. 585, 31 L. Ed. 526; to territories, Lowrey v. Hawaii, 206 U. S. 206, 27 S. Ct. 622, 51 L. Ed. 1026; and even to the United States, Simpson v. U. S., 199 U. S. 397, 26 S. Ct. 54, 50 L. Ed. 245. The rule is no different in New York. City of New York v. N. Y. City Railways Co., 193 N. Y. 543, 548, 86 N. E. 565. Hence we conclude that the contract meant to give the company, for the maintenance of the new shed, whatever rights it had had to maintain the old shed.

[5] What these were we do not mean to suggest; for aught we say here, the city is free at any time to revoke the license, if it be no more, and re-enter. Moreover, it is consistent with the proof that the old occupation was merely by gratuitous, and perhaps unlawful, license, which was invalid as a bar to the city's claim for use and occupation, even while it endured. Indeed, the chief embarrassment we feel in affirming the decree results from this circumstance, because it may be plausibly argued that the new license was no better than the old, and if a claim arose notwithstanding the one, it must arise in spite of the other. What change did the contract effect, even though as we have held, it was intended to grant similar rights to those that had existed before?

[6] We think that this contention ignores the fact that the new license was at least part of a contract, which, being for valid consideration, the board of docks had authority to

make. City of New York v. D., L. & W. R. R. Co., 237 N. Y. 398, 143 N. E. 234. Granting that the old license did not bar an action for use and occupation, the city has at least not shown that any claim for it had ever been made, and, as the city has the burden of proof, we cannot assume that any ever was made. If not, the situation was one in which the city by competent authority declared that the company should in the future enjoy the occupation without paying for it. The earlier user, by reference made the measure of the new license, might become the content of a valid promise, being given for an adequate consideration. It was a valid bar, while outstanding, to any claim for use and occupation. All this is quite consistent with the power of the city to revoke the license at its pleasure and re-enter, since the maintenance of the old shed was no proof of any lawful right to maintain it.

We think that the special master was right, except as to his finding that the company had a vested right in the maintenance of the shed. That was unnecessary to the determination of the case, and is disapproved.

In all other respects the decree is affirmed.