WILLIAM H. WILLIAMS, Appellant, *v.* FRANCIS D. GALLATIN, as Commissioner of Parks of the City of New York, et al., Respondents.

**New York (city of) — Central Park — taxpayer's action to restrain park commissioner from leasing building in Central Park for a purpose foreign to park purposes — when plaintiff entitled to relief demanded.**

The plaintiff, a taxpayer, seeks to enjoin the defendant New York city park commissioner from executing a lease of the Arsenal Building in Central Park to the other defendant, Safety Institute of America, for a term of years, upon the ground that the use of the premises by the tenant for the purposes expressed in the lease is contrary to the provisions of section 627 of the Greater New York charter in that it is foreign to park purposes. Defendant was incorporated by chapter 152 of the Laws of 1911, and is one of a number of private corporations which are deemed to exercise *quasi* public functions and to be entitled to aid from the public treasury. To this end it has obtained free space in Central Park and legislative authority for an annual appropriation by the city. Its purpose is to promote the safety of mankind and to advance the knowledge of the people in methods of lessening the number of casualties and avoiding the causes of physical suffering and premature death. A park is a pleasure ground set apart for recreation of the public, to promote its health and enjoyment. No objects, however worthy, which have no connection with park purposes, as in this case, should be permitted to encroach upon it without legislative authority plainly conferred, even when the dedication to park purposes is made by the public itself and the strict construction of a private grant is not insisted upon.

*Williams* v. *Gallatin*, 191 App. Div. 171, reversed.

(Argued June 1, 1920; decided June 11, 1920.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered March 10, 1920, affirming a judgment in favor of defendants entered upon an order of the court at Special Term granting a motion for judgment on the pleadings and directing a dismissal of the complaint.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Colin McLennan, W. B. Roulstone* and *Gullie B. Goldin* for appellant. The complaint states a cause of action under the provisions of section 51 of the General Municipal Law and section 1925 of the Code of Civil Procedure. (*Bush* v. *Coler*, 60 App. Div. 56; 170 N. Y. 587; *Altschul* v. *Ludwig*, 216 N. Y. 459; *Warrin* v. *Baldwin*, 105 N. Y. 534; *Queens County Water Co.* v. *Monroe*, 83 App. Div. 105.) Central Park, including the Arsenal Building, was acquired under acts of the legislature impressed with a trust to be used as a public square, or park, for purposes exclusively of pleasure, exercise, amusement or ornament. (*B. P. Comrs.* v. *Armstrong*, 45 N. Y. 234; *Trustees* v. *Mayor, etc.*, 33 N. J. L. 13; *Perrin* v. *N. Y. C. R. R. Co.*, 36 N. Y. 120; *People* v. *Green*, 52 How. Pr. 440; *Shoemaker* v. *United States*, 147 U. S. 282; *Riverside* v. *MacLain*, 210 Ill. 308; *Bennett* v. *Seibert*, 10 Ind. App. 369; *Ehmen* v. *Village*, 50 Neb. 715; *Steel* v. *City of Portland*, 23 Ore. 176; *Laird* v. *Pittsburg*, 205 Penn. St. 1; *Commonwealth* v. *Hazen*, 20 Penn. Super. Ct. 487; 207 Penn. St. 52; *State* v. *Schweickardt*, 109 Mo. 496; *Archer* v. *Salinas City*, 93 Cal. 43.) The lease is illegal, null and void. (3 Dillon on Mun. Corp. [5th ed.] § 1096; 3 McQuillin on Mun. Corp. §§ 1141, 1155; 2 Abbott on Mun. Corp. [1906] § 815; *Rowzee* v. *Pierce*, 75 Miss. 846; *Vil. of Riverside* v. *MacLain*, 210 Ill. 308; *Fessler* v. *Town of Union*, 67 N. J. Eq. 14; 68 N. J. Eq. 657; *Church* v. *City of Portland*, 6 L. R. A. 259; *Mulvey* v. *Wangenheim*, 23 Cal. App. 268; *City of Hopkinsville* v. *Jarrett*, 156 Ky. 777; *McEntyre* v. *El Paso Co.*, 15 Col. App. 78; *Bd. of Education* v. *Kansas City*, 62 Kans. 374; *Wessinger* v. *Mische*, 71 Ore. 239; *El Paso U. P. D. Co.* v. *Look*, 201 S. W. Rep. 714.)

*John P. O'Brien, Corporation Counsel* (*John F. O'Brien* and *John Lehman* of counsel), for Francis D. Gallatin, as commissioner of parks, et al., respondents.

*William J. Moran* for Safety Institute of America, respondent. The complainant does not state facts sufficient to constitute a cause of action. (*E. L. Assn. v. Brown*, 214 U. S. 25; *Bogardus* v. *N. Y. L. Ins. Co.*, 101 N. Y. 337; *Greef* v. *Equitable Life Assn.*, 160 N. Y. 19; *Blum* v. *Whitney*, 185 N. Y. 242; *U. S. A. R. Co.* v. *Comptoir Nat. D'Escompte*, 166 App. Div. 67; 221 N. Y. 540.) Respondent's use of the arsenal under the agreement is a proper use, and hence the giving of the privilege therefor was within the power and discretion of the commissioner of parks. (*Gushee* v. *City of New York*, 42 App. Div. 37; *Gredinger* v. *Higgins*, 139 App. Div. 606; *Tompkins* v. *Polas*, 47 Misc. Rep. 309; *Kurtz* v. *Clausen*, 38 Misc. Rep. 105; *Sherburne* v. *Portsmouth*, 72 N. H. 537; *Strock* v. *Mayor, etc.*, 77 Atl. Rep. 1051; *Corn* v. *Abrahams*, 156 Mass. 57; *I. G. Club* v. *Hennessy*, 104 Misc. Rep. 141.)

POUND, J. The plaintiff, a taxpayer, seeks to enjoin the defendant New York city park commissioner from executing a lease of the Arsenal Building in Central Park to the other defendant, Safety Institute of America, for a term of ten years, upon the ground that the use of the premises by the tenant for the purposes expressed in the lease is contrary to the Greater New York charter in that it is foreign to park purposes. The complaint alleges that Central Park is a public park, owned by the city of New York; that the Arsenal Building is located in Central Park, and is a part thereof, and is intended for use solely as public park property; that the defendant Francis D. Gallatin, as commissioner of parks, is the chief executive in charge of Central Park and of the Arsenal Building under the provisions of section 612 of the Greater New York charter; that under section 627 of the Greater New York charter it is unlawful for the defendants to grant, use or occupy for the purposes of a public fair or exhibition any portion of Central Park;

that the defendants entered into a written lease, a copy of which is attached to the complaint, and defendants plan to proceed with the performance and execution of its terms and with the use and alteration of the said Arsenal Building; that the use of Central Park or the Arsenal Building for any of the purposes referred to will impede and materially hinder the beneficial use of Central Park by the public and the people of the city of New York as a place of resort, amusement, recreation and exercise; that it was illegal for the defendants to enter into the lease. The lease recites it is made " in order to promote and increase the public enjoyment, use and convenience of the public park known as Central Park." The lease further provides " that the said building, after it shall have been altered and repaired as herein provided for, shall be kept open and accessible to the public hereafter free of all charge throughout the year, five days in each week, one of which shall be Sunday afternoon, and also for two evenings in each week, within such hours and subject to such rules and regulations as may be determined by the trustees of said institute; and also that on the two days in each week during which said building may remain closed to the general public, it shall be open and accessible to students, schools and societies organized for the purpose of promoting means and methods of safety and sanitation within such hours and subject to such rules and regulations as may be determined by the trustees of said institute."

The American Museum of Safety, now the Safety Institute of America, was incorporated by chapter 152 of the Laws of 1911, which, by section 2 thereof, defines its objects as:

" Sec. 2. The objects of the corporation hereby created are to study and promote means and methods of safety and sanitation and the application thereof to any and all public or private occupations whatsoever, and of advancing knowledge of kindred subjects; and to that end to

establish and maintain a museum, library and laboratories, and their branches wherein all matters, methods and means for improving the general condition of the people as to their safety and health may be studied, tested and promoted, with a view to lessening the number of casualties and avoiding the causes of physical suffering and of premature death; and to disseminate the results of such study, researches and test by lectures, exhibitions and other publications."

Chapter 466, Laws of 1914 (amending Greater New York Charter), section 244-a, authorizes the board of estimate and apportionment of the city of New York to appropriate annually " such sum as it may deem proper, not exceeding fifty thousand dollars, for the keeping, preservation and exhibition of safety devices and means and methods of safety and sanitation in the building or any part thereof in the City of New York now or hereafter occupied by the American Museum of Safety." It is assumed, rather than stipulated, that the purpose of the lease is to provide a place for such exhibition, but the lease is general in its terms. The tenant occupies the building rent free, except as it agrees to expend a substantial sum on alterations of the arsenal for its purposes, for all its non-commercial purposes. The lease may, by its terms, be canceled " when said property shall be required by the party of the first part for *other* park purposes."

Defendant is one of a number of private corporations which are deemed to exercise *quasi* public functions and to be entitled to aid from the public treasury. To this end it has obtained space in Central Park and legislative authority for an annual appropriation by the city. Without reflection upon its worthiness or consideration of its constitutional right to public aid, we approach the question of the legislative authority of the park commissioner to lease to it the old Arsenal now standing in Central Park even to enable it to exhibit its safety and sanitary appliances. The park commissioner may control

and manage the parks for park purposes. Are the purposes of the defendant Safety Institute of America, in any proper sense, park purposes? They are primarily utilitarian and educational in character. Its proposed exhibition is instructive. It is for a long period of years and is not a mere temporary show of things of passing interest. Incidentally it may amuse those who frequent the park for health and recreation, as any show of mechanical devices might, but so far as it fails to promote "means and methods of safety and sanitation" and to advance knowledge of such subjects, it fails to accomplish its corporate purpose.

A park is a pleasure ground set apart for recreation of the public, to promote its health and enjoyment. (*Perrin* v. *N. Y. Cent. R. R. Co.*, 36 N. Y. 120, 124.) It need not and should not be a mere field or open space, but no objects, however worthy, such as court houses and school houses, which have no connection with park purposes, should be permitted to encroach upon it without legislative authority plainly conferred, even when the dedication to park purposes is made by the public itself and the strict construction of a private grant is not insisted upon. (*Brooklyn Park Commissioners* v. *Armstrong*, 45 N. Y. 234; *Higginson* v. *Treasurer, etc., of Boston*, 212 Mass. 583; *Vil. of Riverside* v. *MacLain*, 210 Ill. 308; *City of Hopkinsville* v. *Jarrett*, 156 Ky. 777.) Differences naturally arise as to the meaning of the phrase "park purposes." Under local statutes it has been held that a public library may be erected in a park without diverting it from such purposes (*Spires* v. *City of Los Angeles*, 150 Cal. 64; *Riggs* v. *Board of Education*, 27 Mich. 262), and the city of Hartford was permitted to turn over a part of the land it had dedicated as a public park to the state for the purpose of a state capitol. (*City of Hartford* v. *Maslen*, 76 Conn. 599.) Monuments and buildings of architectural pretension which attract the eye and divert the mind of the visitor; floral and horti-

cultural displays, zoological gardens, playing grounds, and even restaurants and rest houses and many other common incidents of a pleasure ground contribute to the use and enjoyment of the park. The end of all such embellishments and conveniences is substantially the same public good. They facilitate free public means of pleasure, recreation and amusement and thus provide for the welfare of the community. The environment must be suitable and sightly or the pleasure is abated. Art may aid or supplement nature in completing the attractions offered. The legislative will is that Central Park should be kept open as a public park ought to be and not be turned over by the commissioner of parks to other uses. It must be kept free from intrusion of every kind which would interfere in any degree with its complete use for this end.

To promote the safety of mankind and to advance the knowledge of the people in methods of lessening the number of casualties and avoiding the causes of physical suffering and premature death is the purpose of the Safety Institute of America; to provide means of innocent recreation and refreshment for the weary mind and body is the purpose of the system of public parks. The relation of the two purposes is at best remote. No reproach is cast upon the humanitarian aims of the Safety Institute when we say that it must find another place in which to bring them to the attention of the public.

The judgment should be reversed, with costs in all courts, and the motion for judgment on the pleadings denied, with ten dollars costs.

HISCOCK, Ch. J., CHASE, COLLIN, CARDOZO, CRANE and ANDREWS, JJ., concur.

Judgments reversed, etc.