WILLIAM H. WILLIAMS, Plaintiff, *v.* THE CITY OF NEW YORK and Others, Defendants.

Supreme Court, New York County, May 20, 1927.

Municipal corporations — parks — taxpayer's action to enjoin lessee of space in Battery park, New York city, from erecting refreshment stands and restraining commissioner of parks from proceeding under agreement — evidence does not show that erection of stands violates any provision of Greater New York charter — injunction denied.

Plaintiff, who sues as a taxpayer, is neither entitled to a permanent injunction restraining the defendants from further completing refreshment stands at the entrance of Battery park, New York city, nor to a judgment restraining the commissioner of parks of said city from acting and proceeding under the agreement with the lessees of said stands, or declaring null and void the agreement under which the work was being done, in the absence of evidence showing that the erection of the stands violates any provision of the Greater New York charter; the mere fact that they would serve a park purpose does not prevent their serving other useful purposes in the vicinity of the park.

Nor does the evidence warrant a finding that the erection and operation of the stands will interfere with the use of the playground by the children or destroy the spot from an æsthetic viewpoint.

ACTION by taxpayer for an injunction.

Bandler & Roulstone [W. B. Roulstone of counsel], for the plaintiff.

George P. Nicholson, Corporation Counsel [Josiah A. Stover of counsel], for the defendants The City of New York and the Commissioner of Parks.

Bandler, Haas & Collins [Edmund L. Mooney, Wilber W. Chambers, John J. Collins and Jacob Quat of counsel], for the defendant Antonopulos.

CHURCHILL, J. Plaintiff sues as a taxpayer to restrain the further construction by defendant Antonopulos of two small structures which, at the time of the commencement of the action, said defendant was erecting at the southeast entrance to Battery park. Plaintiff further asks that the agreement under which the buildings were being constructed be adjudged null and void and that the defendants be restrained from acting thereunder or performing any of its terms, and that the buildings in question, together with all materials and equipment, be ordered removed from the park.

The agreement under which the work was being done was made by and between Antonopulos and the city of New York and was in writing. It was executed on behalf of the city by the commissioner of parks. It is headed: " Permit and Agreement for Privileges." It provides that in consideration of the rents, covenants, etc., to be performed, kept and observed by the licensee, the city grants to him for the term of ten years a permit, privilege or license to erect, maintain and operate two stands in the park for the sale of candies, soda water, soft drinks, peanuts, fruits, luncheonette, tobacco, cigars and cigarettes. The licensee agrees to pay to the city $4,000 per annum for the privilege granted; to maintain the buildings, stands and spaces occupied in a clean and sanitary condition and in good repair to the satisfaction of the commissioner and to conform to all rules and regulations prescribed by the commissioner. The agreement contains numerous other provisions tending to give the commissioner of parks complete control over the manner in which the buildings should be used and the business of the concessionaire conducted. It was further provided that the plans for the buildings should be approved by the art commission of the city of New York and by the commissioner of parks; that the licensee should not assign or sublet any part of his privilege without the consent of the commissioner. Default in

Supreme Court, May, 1927. [Vol. 129

performance of any of the terms of the agreement was to subject the licensee to cancellation of the entire agreement at the option of the commissioner; and in the event that the space occupied should be required for any public purpose the agreement might be terminated on six months' notice, in which case the licensee was to remove the buildings; otherwise they were to be surrendered to the city on the expiration of the period for which the license was granted.

Antonopulos commenced the construction of the buildings and they were well on toward completion when further work was stopped by a preliminary injunction in this action. (*Williams* v. *Hylan*, 126 Misc. 807; 217 App. Div. 727.) An expenditure of $17,000 had already been made. Nothing more has been done since the service of the injunction order in April, 1926.

There is much argument in the briefs on the question whether the agreement between the city and Antonopulos was a lease or a mere revocable license. Perhaps it was neither. Perhaps it should be construed as the grant of an easement, or a right in the nature of an easement, which after being acted upon would be protected by a court of equity against revocation. (*Borough Bill Posting Co.* v. *Levy*, 144 App. Div. 784; 3 Kent's Com. 452 and notes.) But if it was no more than a revocable license the city would still be liable for damages for its revocation contrary to its terms. (37 C. J. 300; *LeHerisse* v. *Meehan*, 144 App. Div. 581.)

The statute declares the rights of the city in or to its parks, and certain other specified properties, to be inalienable. (Greater N. Y. Charter, § 71.) If this absolute declaration is qualified by other sections of the charter (*City of New York* v. *D., L. & W. R. R. Co.*, 237 N. Y. 398) none is pointed out which would empower the park commissioner to disregard it. Whether the instrument here in question was intended by the parties to create an estate or interest in these park lands, either by way of lease, or by the grant of an easement, or was intended to grant an irrevocable license to maintain the structures for a definite time, I should think, if it were necessary to decide the question, that the intended purpose would have amounted to an alienation of the rights of the city in the park. I should also suppose that the agreement would be equally in conflict with the intent of the statute if, though revocable, its revocation would subject the city to the payment of damages. It would follow that in any aspect of the case the agreement would be *ultra vires* and unenforcible. But, while the record suggests these questions, and some of them are urged in the briefs, it is not necessary to decide them as I view the case.

If the agreement is a valid one plaintiff, of course, has no ground

for complaint. Assuming it to be *ultra vires* and, therefore, invalid it is not a corollary of that proposition that plaintiff is entitled to an injunction restraining the completion of the buildings or their use, when completed, for the purposes intended by the agreement. Though the agreement was *ultra vires* in essential particulars, neither the city nor the park commissioner repudiates it. On the contrary, they desire that the buildings be completed and put to their intended use. They defend the action and ask that the complaint be dismissed. Unless, therefore, the proposed construction and use will be in itself contrary to law and injurious to the public interests there is no reason for interference at the suit of the plaintiff. (*Western N. Y. Water Co.* v. *City of Buffalo,* 242 N. Y. 202.)

Of course, if the concessionaire should elect to go on under such conditions his position will be precarious. His supposed contract, if invalid, will apparently give him no protection on any theory of ratification or estoppel. (*Donovan* v. *Mayor, etc., of New York,* 33 N. Y. 291; *Smith* v. *City of Newburgh,* 77 id. 130; *Lyddy* v. *Long Island City,* 104 id. 218.) He will occupy as a mere licensee subject to removal at the will of the commissioner or of his successors, at any time, notwithstanding the provision for six months' notice. But, in view of the investment already made, he may prefer to do this rather than abandon the enterprise. If he does, I see no reason to stop him unless there is something more in the case than the mere invalidity of the agreement which attempted to give him greater rights than the park commissioner, acting for the city, had the power to confer.

But plaintiff does raise further objections which, if well founded, justify his demand for relief. The substance of such contentions is that park lands are to be put to a use which does not serve a purpose for which park property may be lawfully used. If this is so, of course he is entitled to maintain an action to prevent such misuse of park property. He also points out that the assent of the landscape architect was required before the proposed plan of development could properly be acted upon. (Greater N. Y. Charter, § 611.) He contends that such assent was not given. I think he has the right to insist that no such changes in the ornamentation or development of the parks should be permitted except with the assent of the landscape architect. But I also think, as the park commissioner did, that such assent was sufficiently expressed in his letters to the commissioner of October 8 and 24, 1925. The evidence also shows that the plans were approved by the municipal art commission.

42

Supreme Court, May, 1927.      [Vol. 129

Plaintiff says that the proposed buildings are not intended for park purposes and that their erection should be restrained for that reason. If his premise is sound the conclusion is beyond dispute. (*Williams* v. *Gallatin*, 229 N. Y. 248.) But these refreshment booths will undoubtedly be a convenience to persons frequenting the park and ,the courts have approved the long-settled custom of providing such utilities. (*Williams* v. *Gallatin, supra.*) It is undoubtedly true that passers-by on the streets will also patronize the stands. Probably by far the greater part of their patronage will come from that source. But that is immaterial. If the stands serve a park purpose it does not matter that they will at the same time serve this further purpose. Of course, if it could be seen that the purpose of serving park uses was a mere pretense it would afford no justification for what was being done or attempted. Whether or not additional refreshment places were needed in the park and, if so, the points at which they should be located, were matters for the consideration of the commissioner, and his judgment, exercised in good faith, is not subject to review by the courts. He testified that the erection and operation of the buildings at the spot chosen will not only serve the useful purposes already mentioned, but will, in his judgment, improve the æsthetic aspect of the park at a spot where improvement is badly needed. Even if I were of a totally different opinion as to this and the other details of the case I would not be justified in interfering. Plaintiff's purpose in endeavoring to prevent what he regards as an unauthorized and improper use of any part of the park property, however small the encroachment, is a laudable one; it deserves the most sympathetic consideration. But it would be no less an evil if the court should be led to usurp the functions of executive officials in dealing with such a complaint. The law has conferred upon the park commissioner the power and the responsibility of managing the parks within his jurisdiction. It is not unlikely that he may sometimes make mistakes of judgment. But that would not justify the courts in taking the management of the parks out of his hands and assuming it themselves whenever they disagreed with him.

Complaint is further made that the rent is grossly inadequate, but the testimony does not justify such a finding.

Some contention is also made that the erection and operation of these structures will interfere with the use of the playground by the children who frequent it. If there were any substantial ground for this argument it would still be one to be addressed to the park commissioner and not to the court. It seems to me, however, after viewing the premises, that it is fanciful in the extreme.

I have taken the opportunity afforded by the stipulation of counsel to visit and inspect the premises. I find that at the point in question the park is such in name only. Overshadowed by the elevated railroad structures, surrounded by subway entrances and ventilators and ferry houses, and cut off from the main part of the park by a vehicular roadway, the spot is blighted beyond the possibility of use for rest or recreation and cannot be harmed from the æsthetic viewpoint by what is proposed to be done.

The complaint will be dismissed on the merits, but without costs. The requests for findings have been passed upon. Settle decision on notice.