In the Matter of Shakespeare Workshop, Appellant, against Robert Moses, as Commissioner of Parks of the City of New York, Respondent.

First Department, June 17, 1959.

*Samuel J. Silverman* for appellant.

*Charles H. Tenney, Corporation Counsel,* for respondent.

McNALLY, J. This appeal is from an order dismissing the petition in an article 78 proceeding to review the determination of the respondent made March 18, 1959 denying a permit to the petitioner for the use of Central Park, Borough of Manhattan, City and State of New York, during the Summer of 1959 to present Shakespearean performances.

Petitioner is a nonprofit educational corporation. Its purposes include the encouragement and cultivation of interest in the works of Shakespeare and the establishment of an annual summer Shakespearean Festival.

Pursuant to permits duly issued therefor by the respondent petitioner caused to be rendered plays of Shakespeare in various parks of the City of New York during the years 1956 to 1958 inclusive. During the years 1957 and 1958, such performances were rendered in Central Park.

The artistic, professional and popular success of the performances is undisputed. Respondent has so acknowledged. That petitioner's accomplishments and objectives are deserving of public support is evidenced by respondent's efforts to enlist the interest of prominent citizens to raise funds to enable the

petitioner to carry on. Respondent's executive officer estimated that 110,000 people enjoyed the performances during 1958. It is not contended that the proposed use is not within the scope of park uses and purposes.

On March 11, 1959 petitioner submitted to the respondent its request for permission to continue the Shakespearean performances during the Summer of 1959. Respondent's letter dated March 18, 1959 in response thereto concludes as follows: "Unless therefore you are prepared to agree to charge admission and to enter into a regular concession agreement with the Department of Parks, we cannot give you a permit to operate in the City Park System in 1959."

Respondent's letter of March 18, 1959 sets forth the following as the basis for said determination: (1) the necessity for fencing of the park area involved; (2) the necessity of provision for sanitary and dressing facilities for actors and employees as well as current for lighting; and (3) the necessity for seating facilities and paving of the area to avoid serious erosion problems and the necessity of maintaining grass.

The record clearly shows the petitioner to have been acceptable as an applicant for a permit and that the only question reserved by respondent was with reference to the imposition of reasonable conditions to assure reimbursement of the cost and expense incident to the use of the park by petitioner.

Respondent approximated the cost of a permanent installation to be between $100,000 and $150,000. His opinion was: "If your [petitioner's] performances are worthwhile, people will pay a reasonable charge to see them." However, the respondent has also stated that $20,000 will suffice for fencing, admission booths, seats and sanitary facilities on a makeshift basis.

In *Williams* v. *Gallatin* (229 N. Y. 248, 253–254) park purposes were defined as follows: "Monuments and buildings of architectural pretension which attract the eye and divert the mind of the visitor; floral and horticultural displays, zoological gardens, playing grounds, and even restaurants and rest houses and many other common incidents of a pleasure ground contribute to the use and enjoyment of the park. The end of all such embellishments and conveniences is substantially the same public good. They facilitate free public means of pleasure, recreation and amusement and thus provide for the welfare of the community."

Respondent has imposed the condition that admission fees shall be charged to petitioner's Shakespearean performances and that these admission fees be large enough so that 10%

thereof will yield annually the sum of $10,000 to amortize the cost of adaptation and maintenance in connection therewith. Petitioner does not desire to impose on the public the charge over and above the amount required for reimbursement, has no desire to receive or retain the 90% overage, and asserts that to so do is inconsistent with its objective " to introduce classical theater to the vast uncommitted audiences through the free presentation of Shakespeare." Moreover, petitioner prefers to absorb the entire cost.

The basis for regulation of park admission fees is the implied power to prevent a permittee from exploiting the public. The imposition of admissions which are unnecessary to provide the financial safeguards required by the respondent is, however, in violation of the public's park rights and constitutes administrative action that is per se arbitrary and capricious.

If it is clear that the determination of any public officer is grounded on an irrational basis, the courts " have never hesitated to strike down the illegal or the arbitrary, and will not permit the exercise of arbitrary power to seek shelter under the rubric of exercise of discretion." (*Matter of Delicati* v. *Schechter,* 3 A D 2d 19, 23.)

In *People ex rel. Eastern Parkway Co.* v. *Kennedy* (97 App. Div. 103, 106–107) WOODWARD, J. stated: " The commissioner, as a condition of his consent could undoubtedly require any reasonable compliance with his suggestions as to the location and construction of the tracks; he might very properly specify the kind of paving which should be laid, and might make suitable regulations in reference to any matters connected with the location or construction of the tracks, but here his discretion ends. He cannot go beyond this and determine how the corporation shall discharge its duties to the public in the operation of its lines; that is a matter wholly outside of the scope of the office of a commissioner of parks ".

In *Matter of Picone* v. *Commissioner of Licenses* (241 N. Y. 157, 162) POUND, J. stated: " Laws are made by the law-making power and not by administrative officers acting solely on their own ideas of sound public policy, however excellent such ideas may be."

In no aspect of the case do we perceive a rational basis for the respondent's insistence upon an admission charge contrary to the wishes, policy and purposes of the petitioner. Nor do we see any connection between the power and duty of the respondent to preserve the parks and their functions and the requirement of a minimum admission charge.

It may be proper to fix a reasonable amount for the physical requirements and restoration charges incident to an applicant's use and to provide for the payment thereof or security therefor in the form of a bond or otherwise. It may also be proper, with the consent of the applicant, to establish an admission charge adequate to provide reimbursement. If the applicant is financially able to meet the required reimbursement from its own treasury, or otherwise, without resorting to an admission charge, the applicant should be free to do so. If the applicant is willing to consent to an admission arrangement, it should not be required to impose an admission charge in excess of that which will reasonably assure reimbursement for the physical changes and restoration costs incident to the proposed use.

In respect of park permits, it is clear respondent has a wide discretion. This discretion, however, is not unbounded. Its exercise must be related to and consistent with park purposes. Parks are primarily for the use, benefit and enjoyment of the public. The maintenance and use of parks do not empower regulation of the internal financial policies of an applicant so long as adequate and reasonable provision is made for reimbursement of the expense resulting from his use.

No useful park purpose is served by the requirement that petitioner make an admission charge and retain 90% thereof when petitioner desires no part of it. Such a requirement incident to the issuance of a park permit is clearly arbitrary, capricious and unreasonable. Where, as here, it is apparent that the sole substantial ground for the denial of the permit is arbitrary, capricious and unreasonable, the determination should and must be vacated and set aside.

Petitioner concedes respondent may impose reasonable conditions toward proper and reasonable reimbursement. Under the circumstances, respondent is entitled to the opportunity to act thereon and we may not at this time mandate the issuance of the permit.

The final order should be reversed on the law, the determination annulled, and the matter remanded to the respondent for proceedings consistent herewith, with costs.

BOTEIN, P. J., BREITEL, RABIN and M. M. FRANK, JJ., concur.

Order unanimously reversed on the law, the determination of the respondent annulled and the matter remanded to the respondent for further proceedings consistent with the opinion filed herein, with $20 costs and disbursements to the appellant.