232 F.3d 324 (2nd Cir. 2000)
 FRIENDS OF VAN CORTLANDT PARK, PARKS COUNCIL, INC., NORWOOD COMMUNITY ACTION, LINDA BURGER, AND FAY MUIR, Plaintiffs-Appellants,
STATE OF NEW YORK, Plaintiff-Intervenor-Appellant,
UNITED STATES OF AMERICA, Plaintiff,
BARBARA DEBUONO, M.D., as Commissioner of the New York State Department of Health, Plaintiff-Intervenor,
v.
CITY OF NEW YORK, NEW YORK CITY DEPARTMENT OF ENVIRONMENTAL PROTECTION, NEW YORK CITY PLANNING COMMISSION, NEW YORK CITY COUNCIL, NEW YORK CITY DEPARTMENT OF PARKS AND RECREATION, RUDOLPH W. GIULIANI, JOEL A. MIELE, SR. AND HENRY J. STERN, DEPARTMENT OF CITYWIDE ADMINISTRATIVE SERVICES, Defendants-Appellees.
 Docket Nos. 00-6183(L), -6197(CON), -6198CON
August Term 2000
 UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
 Submitted November 3, 2000
Decided: November 15, 2000
 
 Pre-argument motion for certification to New York Court of Appeals of state law issue arising in appeal from the May 12, 2000, order of the United States District Court for the Eastern District of New York (Nina Gershon, District Judge), dismissing claims for declaratory and injunctive relief filed by plaintiff-appellant citizen groups and individuals to bar construction of water treatment plant underneath Van Cortlandt Park in the absence of state legislative approval.
 Motion granted; question certified to the New York Court of Appeals.
 Howard B. Epstein, Theodore A. Keyes, Peter C. Trimarchi, Schulte Roth & Zabel LLP, New York, N.Y., for plaintiffs-appellants Friends of Van Cortlandt Park and The Parks Council, Inc.
 Jack L. Lester, New York, N.Y., for plaintiffs-appellants Norwood Community Action, Linda Burger and Fay Muir.
 Eliot Spitzer, NY State Atty. General, Gordon J. Johnson, Norman Spiegel, Asst. Attys. General, Peter G. Crary, Asst. Solicitor General, New York, N.Y., for plaintiff-intervenor-appellant State of New York and plaintiff-intervenor Barbara DeBuono, M.D.
 Loretta E. Lynch, U.S. Atty., Deborah B. Zwany, Asst. U.S. Atty., Brooklyn, N.Y., for plaintiff United States of America.
 Michael D. Hess, NY City Corporation Counsel, Ronald E. Sternberg, Leonard Koerner, Inga Van Eysden, New York, N.Y., for defendants-appellees.
 Before: NEWMAN, CABRANES, and STRAUB, Circuit Judges.
 ORDER
 Certificate to the New York Court of Appeals pursuant to Local Rule § 0.27 and New York Compilation of Codes, Rules & Regulations, title 22, § 500.17(b).
 OPINION
 JON O. NEWMAN, Circuit Judge.
 
 
 1
 The State of New York ("State") and the Friends of Van Cortlandt Park have moved, in advance of oral argument of the pending appeal, for certification to the New York Court of Appeals of a state law issue concerning whether state legislative approval is required for construction by the City of New York ("City") of a $660 million water treatment plant ("WTP") under a 23-acre portion of Van Cortlandt Park in the Bronx, known as the Mosholu Golf Course Site ("Mosholu site"). The motion, which was presented to this panel just a few days ago, has regrettably been pending in this Court since it was filed on June 30, 2000. Despite the prior lack of prompt attention to the certification request, this panel has concluded that immediate action is now required by this Court, and that we should fashion a certification request, as more fully explained below, that affords the New York Court of Appeals an opportunity to determine whether it can resolve the merits of the state law issue expeditiously.
 
 
 2
 The state law issue arises out of a suit brought by the United States and the State against the City in 1997. The United States alleged, among other things, that water being drawn by the City from the Croton Watershed did not meet the standards required by the Safe Drinking Water Act, 42 U.S.C. § 300g-1 et seq. That suit resulted in the entry of a consent decree ("Decree") requiring the City to provide filtration and disinfection treatment for its Croton Water Supply System. See United States v. City of New York, 30 F. Supp.2d 325 (E.D.N.Y. 1998) (approval of Decree). The Decree establishes a series of precise deadlines by which the City must take several sequential steps to plan, construct, and operate a WTP at a site selected by the City. The Decree establishes escalating daily fines for the City's failure to meet these steps. It has been estimated that delays in meeting the deadlines could result in fines amounting to several millions of dollars. Two of the requirements of the Decree are by July 31, 1999, the City must request any needed state legislation, and that by February 1, 2000, the City must "obtain state legislation, if necessary for use of the selected site for the WTP." See Decree ¶¶ VI(A)(14), (15). The penalty for violating each of these two deadlines escalates to $5,000 per day (for each deadline) after 60 days, see id. ¶ XII(B)(2), and, because of the complex and interrelated nature of the penalty provisions, could entail much higher aggregate penalties in the event that legislative approval is required and either not obtained or obtained hereafter.
 
 
 3
 In May 1998, the City began to consider the Mosholu site. As the City's decision-making process focused on the site, the office of the New York Attorney General informed the City in January 1999 that the State believed that legislative approval of the site was required because the WTP was planned to be constructed underneath parkland. The City disagreed that legislative approval was required and ultimately decided, by action of the City Council in July 1999, to proceed with the placement of the WTP underneath Van Cortlandt Park at the Mosholu site.
 
 
 4
 That decision precipitated the filing in state court of two lawsuits by citizen groups, Friends of Van Cortlandt Park et al. v. City of New York et al., No. 99 CV 7399 (E.D.N.Y. 1999), and Norwood Community Action et al. v. Department of Environmental Protection et al., No. 99 CV 6224 (E.D.N.Y. 1999) (hereafter "citizen suits"). These suits were removed to the United States District Court for the Eastern District of New York because that Court was exercising continuing jurisdiction over the Decree in United States v. City of New York. Ultimately all parties in all three suits moved for summary judgment. The District Court granted summary judgment for the City, ruling, among other things, that the proposed construction of the WTP at the Mosholu site did not require state legislative approval. See United States v. City of New York, 96 F. Supp.2d 195 (E.D.N.Y. 2000) (Gershon, District Judge). From that decision, the plaintiffs in the two citizen suits and the State, as plaintiff-intervenor, have appealed. All three appeals were consolidated by order entered July 19, 2000.
 
 
 5
 In connection with the pending consolidated appeal, the State and the plaintiffs-appellants in Friends of Van Cortlandt Park have moved, in advance of oral argument, for certification to the New York Court of Appeals of the issue of whether state legislative approval is required for the proposed use of the Mosholu site. A motions panel referred the motion to the merits panel. The consolidated appeal was recently assigned to our panel, and the certification motion was submitted to our panel just a few days ago. The City opposes certification, expressing the view that the state law issue has been correctly decided in its favor by the District Court. The United States has not taken a position on certification, except to ask that in deciding whether to certify, this Court should "consider the potential for delay in implementation of the Consent Decree." See Declaration of Asst. U.S. Atty. Deborah B. Zwany at unnumbered page 4.
 
 
 6
 In considering the certification motion, we recognize that we must be attentive to both the extent to which resolution of the state court issue is preferably to be made by the New York Court of Appeals and the risk that certification might incur delay. We consider these concerns separately.
 
 1. The State Law Issue
 
 7
 The issue of whether state legislative approval is required for the proposed WTP concerns what has been referred to as the park alienation issue or the public trust issue. The leading New York decision on this issue is Williams v. Gallatin, 229 N.Y. 248 (1920). Although the holding concerned a clear-cut case of alienation of parkland (involving a lease of a building in New York's Central Park to the Safety Institute of America), the Court used broad language suggesting that legislative approval is required for non-park uses of parkland, even where there has been no outright alienation, whether by deed or lease, to third parties. Thus, the Court said that "no objects, however worthy ..., which have no connection with park purposes, should be permitted to encroach upon it without legislative authority plainly conferred," id. at 253, and that a park "must be kept free from intrusion of every kind which would interfere in any degree with its complete use for this end," id. at 254.[1] See also Ackerman v. Steisel, 104 A.D.2d 940, 941, 480 N.Y.S.2d 556, 558 (1984) ("Dedicated park areas in New York are impressed with a public trust and their use for other than park purposes, either for a period of years or permanently, requires the direct and specific approval of the State Legislature, plainly conferred."). Arguably inconsistent with the broad language of Williams and Ackerman is an unreported decision, Wigand v. City of New York, N.Y.L.J., Sept. 25, 1967, at 21, col. 5 (Sup. Ct. Richmond Cty.), which permitted, without legislative approval, the placement of two water tanks underneath a portion of parkland.[2]
 
 
 8
 The City contends, and the District Court agreed, that New York courts would not regard the proposed WTP as an action requiring legislative approval because no part of Van Cortlandt Park is proposed to be alienated to a third party, the WTP will be constructed underneath the park, the surface of the park will be restored to usable parkland after completion of the WTP, and the time during which parkland will not be usable due to construction of the WTP is of acceptable duration, especially in view of the small percentage of the entire park that will be temporarily withdrawn from park use due to construction of the WTP. The State and the citizen groups respond that, even if, without legislative approval, some routine non-park use may be made of the space underneath a park, e.g., laying sewer pipes, the construction of a $660 million WTP underneath a park is a massive non-park use of parkland that requires legislative approval. These plaintiffs further contend that, even if the placement of the proposed WTP underneath the park does not require legislative approval, such approval is required because the proposed project will withdraw from park use a significant portion of the park (23 acres) for a significant time period (six years).
 
 
 9
 We consider these contentions to frame a substantial issue on which the law of New York is not clear. Furthermore, the issue of the need for state legislative approval seriously implicates matters of major public interest. Finally, the fact that the State and the City are on opposite sides of this state law issue adds a potent reason why the issue should be resolved by the State's highest court.
 
 2. Delay
 
 10
 We are aware that the certification process always incurs the risk of some delay, although our Court's use of the process with the New York Court of Appeals has generally kept such risk to a tolerable minimum. Nevertheless, we recognize that the passage of time will have significance in this litigation to a much greater extent than in cases where we have previously deemed certification appropriate. If legislative approval is determined to be necessary, the City will have already missed both the July 31, 1999, and the February 1, 2000, deadlines for requesting and obtaining any necessary state legislation, will already have incurred liability for substantial daily fines, and will continue to accrue liability for such fines at the rate of $10,000 a day. The City will also face the risk of incurring much higher aggregate fines. These considerations prompt us to adapt our certification request to the special exigencies of the situation. Although we deem it entirely inappropriate for our Court to attempt to impose on the highest court of a state a deadline to assure prompt resolution of the certified issue, we believe that we should not subject the parties to whatever delay might result from certification unless the Court of Appeals itself determines that it expects to resolve the certified issue on an expedited basis.
 
 
 11
 Accordingly, we will direct our Clerk, per our customary form of order, to transmit to the Court of Appeals this opinion certifying the question set out below, subject to the following special provision: we will expect to withdraw our certification unless the Court of Appeals, in the event that it elects to accept the question certified for its decision, indicates that it reasonably expects to be able to decide the certified question within 90 days after accepting certification. To facilitate the expeditious consideration that we hope the Court of Appeals will be able to provide, we suggest that the Court of Appeals might wish to consider resolving the issue on the basis of the comprehensive briefs filed by the parties in this Court, supplemented, if the Court of Appeals wishes, by oral argument. In framing this unusual provision, we emphasize that we are endeavoring to be respectful of the prerogatives of a Court for which we have the highest regard, and we hope that the Court of Appeals will appreciate that we are only endeavoring to let it decide, as it sees fit, whether it can proceed on a basis sufficiently expedited as to make our certification appropriate, in view of the special exigencies of this litigation. We also express the hope that the Court of Appeals will act expeditiously on this request for certification. Finally, we invite the Court of Appeals to contact this panel, formally or informally, if it believes that some adjustment of the special provision we have framed is warranted.
 
 
 12
 We therefore certify, subject to the provision set forth above, the following question: Does any aspect of the proposed WTP require state legislative approval? This question might conveniently be considered to subsume, among other things, two subsidiary questions: Is state legislative approval required for the City to place the proposed WTP underneath Van Cortlandt Park, and, if not, is state legislative approval required before the City may withdraw from parkland use the amount of parkland that will be interfered with by construction of the proposed WTP for the time currently estimated to restore the parkland to park use? Although we certify to the Court of Appeals the question as framed above, we also wish to make clear that we have no desire to restrict the Court of Appeals' consideration of any other state law issues presented by this appeal that it deems appropriate for its consideration.
 
 
 
 Notes:
 
 
 [1]
 There is room for doubt whether the "which" clause in this quoted passage is a definitional clause, limiting "intrusion of every kind" to those that "would interfere in any degree with [a park's] complete use," or a descriptive clause, merely noting that "intrusion of every kind" has the capacity to "interfere in any degree with [a park's] complete use. The pronoun "that" would have clearly indicated a definitional clause; the pronoun "which," preceded by a comma, would have clearly indicated a descriptive clause. The pronoun "which" without a preceding comma leaves the matter ambiguous. See Theodore M. Bernstein, The Careful Writer, a Guide to English Usage 443 (1965) ("THAT AND WHICH").
 
 
 [2]
 The issue also appears to be unsettled in other jurisdictions. Compare H.B. Zachry v. City of San Antonio, 305 S.W.2d 558 (Tex. 1957) (invalidating, for lack of legislative approval, garage to be constructed underneath parkland), with City and County of San Francisco v. Linares, 106 P.2d 369 (Cal. 1940) (permitting garage underneath parkland without legislative approval).