[16 NE3d 527, 992 NYS2d 469]

Daniel Capruso et al., Respondents, v Village of Kings Point et al., Appellants.

State of New York, Respondent, v Village of Kings Point, Appellant.

Argued May 1, 2014; decided June 12, 2014

**POINTS OF COUNSEL**

*Ackerman, Levine, Cullen, Brickman & Limmer, LLP*, Great Neck (*John M. Brickman, Stephen G. Limmer, Todd H. Hesekiel*

and *Benjamin S. Kaplan* of counsel), *Sol Wachtler* and *Stuart M. Cohen,* for appellants in the first and second above-entitled actions. These actions were barred by the statute of limitations and laches; the courts below erred in applying the continuing wrong doctrine. (*Covington v Walker,* 3 NY3d 287, 4 NY3d 740, 545 US 1131; *Matter of Shapiro v Town of Ramapo,* 98 AD3d 675, 20 NY3d 994; *Matter of Ackerman v Steisel,* 104 AD2d 940, 66 NY2d 833; *Bloomingdales, Inc. v New York City Tr. Auth.,* 13 NY3d 61; *509 Sixth Ave. Corp. v New York City Tr. Auth.,* 15 NY2d 48; *Jensen v General Elec. Co.,* 82 NY2d 77; *Sporn v MCA Records, Inc.,* 58 NY2d 482; *Knobel v Shaw,* 90 AD3d 493; *Mattera v Mattera,* 125 AD2d 555; *Greco v Incorporated Vil. of Freeport,* 223 AD2d 674.)

*Super Law Group, LLC,* New York City (*Reed W. Super* and *Alexandra I. Hankovszky* of counsel), and *Albert K. Butzel Law Offices* (*Albert K. Butzel* of counsel), for respondents in the first above-entitled action. I. The first cause of action is unquestionably timely because it sought and obtained relief to prevent proposed future nonpark use of parkland presently used for recreation. (*Matter of Essex County v Zagata,* 91 NY2d 447; *Church of St. Paul & St. Andrew v Barwick,* 67 NY2d 510; *Toilet Goods Assn., Inc. v Gardner,* 387 US 158; *Williamson County Regional Planning Comm'n v Hamilton Bank of Johnson City,* 473 US 172; *Matter of Martin v Ronan,* 44 NY2d 374, 45 NY2d 776; *Sorrentino v Mierzwa,* 25 NY2d 59; *106 Mile Transp. Assoc. v Koch,* 656 F Supp 1474; *Matter of Dreves v New York Power Auth.,* 131 AD2d 182; *Village of Croton-On-Hudson v County of Westchester,* 38 AD2d 979.) II. The Village of Kings Point's ongoing use of the Western Corner for nonpark purposes can be enjoined under the public trust doctrine so long as it remains unauthorized. (*Matter of Ackerman v Steisel,* 104 AD2d 940, 66 NY2d 833; *Williams v Gallatin,* 229 NY 248; *Friends of Van Cortlandt Park v City of New York,* 95 NY2d 623; *Brooklyn Park Commrs. v Armstrong,* 45 NY 234; *Illinois Central R. Co. v Illinois,* 146 US 387; *Matter of Central Parkway,* 140 Misc 727; *Stephenson v County of Monroe,* 43 AD2d 897; *Chatham Green v Bloomberg,* 1 Misc 3d 434; *Gowanus Indus. Park, Inc. v City of New York,* 15 AD3d 311, 5 NY3d 708; *Phillips Petroleum Co. v Mississippi,* 484 US 469.) III. The Village of Kings Point abandoned its laches defense, which is unavailable in public trust cases and was not established by the facts. (*Telaro v Telaro,* 25 NY2d 433; *Matter of Burke v Sugarman,* 35 NY2d 39; *Matter of Cash v Bates,* 301 NY 258; *Patrolman's Benevolent Assn. of Southampton Town, Inc. v Town of Southampton,* 2009

NY Slip Op 32660[U]; *Natural Resources Defense Council, Inc. v United States Army Corps of Engrs.*, 399 F Supp 2d 386; *Steubing v Brinegar*, 511 F2d 489; *Save the Courthouse Comm. v Lynn*, 408 F Supp 1323; *Flacke v NL Indus.*, 228 AD2d 888; *Student Pub. Interest Research Group of N.J., Inc. v P.D. Oil & Chem. Stor., Inc.*, 627 F Supp 1074.)

*Eric T. Schneiderman, Attorney General*, New York City (*Bethan A. Davis Noll, Barbara D. Underwood* and *Richard Dearing* of counsel), for respondent in the second above-entitled action. I. The State of New York's claim to enjoin the Village of Kings Point's Department of Public Works project is not barred by the statute of limitations. (*Friends of Van Cortlandt Park v City of New York*, 95 NY2d 623; *Village of Croton-On-Hudson v County of Westchester*, 38 AD2d 979, 30 NY2d 959; *Bates v Holbrook*, 171 NY 460.) II. The claim to enjoin the Village of Kings Point's existing nonpark use of part of the Western Corner is not time-barred. (*Friends of Van Cortlandt Park v City of New York*, 95 NY2d 623; *Matter of Ackerman v Steisel*, 104 AD2d 940, 66 NY2d 833; *Johnson v Town of Brookhaven*, 230 AD2d 774; *Tobin v Hennessy*, 220 App Div 695; *Bloomingdales, Inc. v New York City Tr. Auth.*, 13 NY3d 61; *Covington v Walker*, 3 NY3d 287; *509 Sixth Ave. Corp. v New York City Tr. Auth.*, 15 NY2d 48; *Matter of Burke v Sugarman*, 35 NY2d 39; *Lucchesi v Perfetto*, 72 AD3d 909; *1050 Tenants Corp. v Lapidus*, 289 AD2d 145.) III. The Village of Kings Point's laches argument is forfeited and meritless. (*Matter of LaPine*, 18 AD3d 552; *Matter of Cortlandt Nursing Home v Axelrod*, 66 NY2d 169; *Telaro v Telaro*, 25 NY2d 433; *Alfred L. Snapp & Son, Inc. v Puerto Rico ex rel. Barez*, 458 US 592; *People v Grasso*, 11 NY3d 64; *Matter of Daleview Nursing Home v Axelrod*, 62 NY2d 30; *Board of Supervisors of Richmond County v Ellis*, 59 NY 620; *Matter of Burke v Sugarman*, 35 NY2d 39; *People v Hawkins*, 11 NY3d 484; *Matter of Schulz v State of New York*, 81 NY2d 336.)

*Wade Beltramo, General Counsel*, Albany, for New York State Conference of Mayors and Municipal Officials, amicus curiae in the first above-entitled action. I. Local governments should be allowed to assert the defense of laches in claims for alienation of parkland to prevent the waste of municipal resources and taxpayer dollars and to minimize the disruption of municipal operations. (*Matter of Barresi v County of Suffolk*, 72 AD3d 1076; *Dwyer v Mazzola*, 171 AD2d 726; *Weiss v Mayflower Doughnut Corp.*, 1 NY2d 310.) II. Local governments should be allowed to assert laches as a defense to challenges of impermissible

parkland alienation in order to prevent problems of proving the claims being adjudicated. (*Friends of Van Cortlandt Park v City of New York*, 95 NY2d 623; *Powell v City of New York*, 85 AD3d 429; *Matter of Angiolillo v Town of Greenburgh*, 290 AD2d 1; *Grayson v Town of Huntington*, 160 AD2d 835; *Chatham Green v Bloomberg*, 1 Misc 3d 434; *Matter of Jones v Amicone*, 27 AD3d 465; *Blanco v American Tel. & Tel. Co.*, 90 NY2d 757; *Meyer v Frank*, 550 F2d 726.)

*Andrew A. Rafter*, Brooklyn, for Citizens Campaign for the Environment and others, amici curiae in the first and second above-entitled actions. I. A decision in favor of the Village of Kings Point in this case would decimate the public trust doctrine and threaten parkland throughout the state. (*Williams v Gallatin*, 229 NY 248.) II. Public trust lands are not subject to adverse possession. (*Rodrigues v Catskill Revitalization Corp.*, 302 AD2d 762; *Lewis v Village of Lyons*, 54 AD2d 488; *Burbank v Fay*, 65 NY 57; *People v Baldwin*, 197 App Div 285; *Walsh's Inc. v County of Oswego*, 9 AD2d 393; *Matter of Harbison v City of Buffalo*, 4 NY2d 553; *Garcia v Holze*, 94 AD2d 759; *Flacke v Onondaga Landfill Sys.*, 69 NY2d 355.) III. The equities favor respondents.

## OPINION OF THE COURT

Pigott, J.

Kings Point Park occupies 173 acres on the Great Neck Peninsula of Long Island. Defendant Village of Kings Point acquired the property for park purposes in the 1920s. At the western end of the park is the heavily wooded "Western Corner," occupying 5.4 acres, an area known for its mature trees and hiking trails. It is this section of Kings Point Park that is the subject of the present appeal.

In 1938, the Village leased Kings Point Park to the Great Neck Park District with the understanding that the Park District would manage and maintain the property "as a natural and scenic park."[1] In 1946, the Village and Park District executed an addendum to the lease, excluding the Western Corner from the leased lands, because the Village wished to reserve that portion of the park for a pistol range for local police and for storage of highway materials and supplies. The Western Corner was reserved in this fashion each time the lease was

---

1. The Village reserved the right to use a particular area in the park, the location of which is disputed by the parties, "for dumping ashes, clean refuse and waste material from the Village."

renewed. In 1966, the State Comptroller informed the Village that its lease required legislative authorization, and, as a result, legislation was passed the following year that "validated, ratified and confirmed" the most recent lease (L 1967, ch 563, § 2, 1967 McKinney's Session Laws of NY at 606).[2] Although much of the Western Corner remains undisturbed mature woodland, the Village has erected structures in the northern part of the Western Corner, including a garage and a Quonset hut, measuring about 1,700 square feet, for the storage of road salt.

In November 2008, the Village adopted a proposal to deforest, regrade and enclose the Western Corner and build a Department of Public Works (DPW) facility. The proposed facility, approximately 12,000 square feet in area, would include a diesel-truck garage, a road-sign shop, administrative offices, and crew quarters, and be enclosed by a chain-link fence. The proposal also envisaged the construction of an asphalt roadway and parking area. The Village did not seek legislative authorization.

Plaintiffs Daniel Capruso, Alan Berkower and Elizabeth Allen, who live near Kings Point Park, commenced an action against the Village, its Mayor and its Board of Trustees in March 2009, seeking to enjoin both the Village's proposed DPW project and its current use of the Western Corner for storage of highway materials and supplies, as unlawful uses of parkland in violation of the common-law "public trust doctrine." Following proceedings not pertinent to this appeal, the State of New York commenced an action against the Village seeking the same relief, but only with respect to the Village's proposed DPW project. The State moved for a preliminary injunction with respect to the DPW project. Defendants cross-moved to dismiss both complaints as barred by the applicable statute of limitations and laches.

In orders dated July 29, 2009 and November 18, 2009, Supreme Court denied defendants' cross motions and granted plaintiffs' motion for a preliminary injunction (34 Misc 3d 1240[A], 2009 NY Slip Op 52829[U] [2009]; 2009 NY Slip Op 33338[U] [2009]). An interlocutory appeal followed. The Appellate Division affirmed Supreme Court's first order insofar as reviewed and its second order insofar as appealed from (78 AD3d 877 [2d Dept 2010]).

Following discovery, plaintiffs and the State moved for summary judgment. In June 2011, Supreme Court granted their

---

2. The metes and bounds description of Kings Point Park contained in the 1967 law *includes* the Western Corner, however.

motion, permanently enjoining the Village from proceeding with the DPW facility project, enjoining defendants from obstructing existing access to Kings Point Park without explicit and specific approval from the State Legislature and directing defendants to remove all materials, equipment, and physical alterations, including structures, under their control from the Western Corner. Supreme Court also awarded the individual plaintiffs their reasonable attorneys' fees and other expenses. The Appellate Division modified Supreme Court's order and judgment, to delete the provision concerning attorneys' fees and expenses, and, as so modified, affirmed (102 AD3d 902 [2d Dept 2013]).

We granted defendants leave to appeal from the Appellate Division's more recent, final order, bringing the earlier, nonfinal order up for review. We now affirm.

Defendants concede that the Western Corner is dedicated parkland and that the present and proposed uses of it have not been authorized by the State Legislature and thus violate the public trust doctrine. The State's "legislative approval is required when there is a substantial intrusion on parkland for non-park purposes" (*Friends of Van Cortlandt Park v City of New York*, 95 NY2d 623, 630 [2001]; *see also Williams v Gallatin*, 229 NY 248, 253 [1920]), and defendants do not dispute that their present and proposed uses of the Western Corner constitute substantial intrusion on parkland for nonpark purposes. In a similar vein, they concede that the exclusion of the Western Corner in the amended lease did not remove that part of Kings Point Park from the purview of the public trust doctrine. Instead, they argue that the claims brought by plaintiffs and the State are time-barred.

Defendants raise different defenses with regard to plaintiffs' respective causes of action. With respect to the challenge to the proposed construction of the DPW facility, defendants contend that use of the Western Corner for nonpark purposes, particularly storage of highway materials and supplies, has been ongoing since the lease addendum of 1946 that excluded the Western Corner, and that the proposed DPW facility would amount to "nothing more than a change in the nature and scope of an ongoing non-park use." As such, defendants contend, plaintiffs should have challenged nonpark use within six years of the 1946 addendum, under CPLR 213 (1) (*see generally Solnick v Whalen*, 49 NY2d 224, 229-230 [1980]), or, at the latest, within six years of the date when the Village began to store highway materials and supplies in the Western Corner.

■ However, the difference in scale between the present use and the proposed facility is substantial, and there is no record support to conclude otherwise. A project involving the construction of a DPW facility measuring some 12,000 square feet in area, regrading, paving of access roads, destruction of numerous mature trees, and removal of hiking trails is not merely a change in the nature and scope of a road salt storage facility. Thus, we conclude that the causes of action challenging the proposed project are not barred by the statute of limitations.

■ With respect to plaintiffs' second cause of action, seeking to enjoin the Village's present nonpark use of part of the Western Corner, defendants' contention that plaintiffs should have brought their action within six years of the change in the use of the Western Corner has more resonance. Plaintiffs, however, respond that the "continuing wrong doctrine" applies here to toll the running of the statute of limitations.

We have applied the continuing wrong doctrine

> "in certain cases such as nuisance or continuing trespass where the harm sustained by the complaining party is not exclusively traced to the day when the original objectionable act was committed. The rule is based on the principle that continuous injuries create separate causes of action barred only by the running of the statute of limitations against each successive trespass. The repeated offenses are treated as separate rights of action and the limitations period begins to run as to each upon its commission" (*Covington v Walker*, 3 NY3d 287, 292 [2004], *cert denied* 545 US 1131 [2005] [citations omitted]).

The doctrine applies here to ongoing use of parkland alleged to violate the public trust doctrine.

The harm sustained by the public when structures having "no connection with park purposes . . . encroach upon [parkland] without legislative authority plainly conferred" (*Williams*, 229 NY at 253) cannot be traced exclusively to the day when the illegal encroachment began. "In New York, we have consistently characterized an unlawful encroachment as a *continuous* trespass giving rise to successive causes of action" (*509 Sixth Ave. Corp. v New York City Tr. Auth.*, 15 NY2d 48, 52 [1964]). Even though here, because the Village owns the parkland, the encroachment is not trespass, it clearly bears the hallmark of

continuity common to the trespass cases: defendants are, continuously, in violation of the public trust doctrine and able to abate that wrong. Just as the failure of a landlord to repair a building's common elements, in violation of bylaws, "constituted a continuing wrong that is not referable exclusively to the day the original wrong was committed" (*Kaymakcian v Board of Mgrs. of Charles House Condominium*, 49 AD3d 407, 407 [1st Dept 2008] [internal quotation marks omitted]) and "[t]he alleged violation of defendants' contractual obligations to comply with the law and refrain from interfering with the rights of other lessees amounts to a continuous or recurring wrong" (*1050 Tenants Corp. v Lapidus*, 289 AD2d 145, 146 [1st Dept 2001]), so does a municipality's ongoing failure to comply with the law and seek legislative authorization for nonpark use of parkland. The harm does not consist of the lingering effects of a single, discrete incursion, but rather is a continuous series of wrongs. In short, the claim here is "predicated on continuing unlawful acts and not on the continuing effects of earlier unlawful conduct" (*Shelton v Elite Model Mgt., Inc.*, 11 Misc 3d 345, 361 [Sup Ct, NY County 2005] [internal quotation marks omitted], quoting *Selkirk v State of New York*, 249 AD2d 818, 819 [3d Dept 1998]).[3]

The Village argues that a violation of the public trust doctrine differs from trespass and nuisance situations since the latter may not be discovered until long after the initial physical inva-

---

**3.** While some cases in which we have applied the continuous wrong doctrine have involved "intermittent and recurring injuries to another" (*Meruk v City of New York*, 223 NY 271, 276 [1918]; *see also e.g. Reed v State*, 108 NY 407, 414 [1888]), others involved harms of a continuous rather than episodic nature (*see e.g. Silsby Mfg Co. v State*, 104 NY 562, 569 [1887] ["If the proper facts upon which to base an action were found, it would then appear that the State had unlawfully used a certain amount of water, to the use of which the claimant had an undoubted right, and every day such use continued a new cause of action arose therefor in favor of the claimant"]). Harms inflicted by illegal use of property

> "need not be intermittent or episodic in order for there to be successive causes of action continuously accruing throughout the period that harm is suffered . . . that is, the period during which the wrongful act has consequences adverse to the use and enjoyment of the property. Injuries can also be fluid and constant through time, recurring not from time to time, but, in theory, second by second, as, for example, when a structure such as an elevated street railroad encroaches upon easements of light, air and access. A structure so encroaching . . . is regarded as a continuous trespass giving rise to successive causes of action" (*Amax, Inc. v Sohio Indus. Prods. Co.*, 121 Misc 2d 814, 815-816 [Sup Ct, NY County 1983] [citations omitted]).

sion of private property rights, whereas acts in violation of the public trust doctrine should be immediately discernible. For their part, plaintiffs and the State cite our decision in *Matter of Ackerman v Steisel* (66 NY2d 833, 835 [1985], *affg for reasons stated below* 104 AD2d 940 [2d Dept 1984]), in which we affirmed an order of the Appellate Division directing the New York City Departments of Sanitation and Transportation to remove decades-old public works facilities from parkland in Queens. While we agree with the Village that *Ackerman* is not dispositive, insofar as a statute of limitations defense was not raised, we do not accept the Village's analysis of public trust doctrine cases. Rather, we agree with those amici that observed that "[i]t would be unreasonable to expect ordinary citizens who use . . . parks to know whether a particular use by a municipality has received approval by the State Legislature and whether municipal infrastructure located on parkland is intended to serve the park or public areas outside of the park."

In sum, under the continuing wrong doctrine, plaintiffs are able to challenge defendants' ongoing violation of the public trust doctrine at any time while the violation lasts, without being barred by the statute of limitations. We need not decide here whether the continuing wrong doctrine would apply to an allegation that a discrete event such as the sale of parkland to a private developer was in violation of the public trust doctrine (*see Matter of Shapiro v Town of Ramapo*, 98 AD3d 675, 677 [2d Dept 2012], *lv dismissed* 20 NY3d 994 [2013]).

The Village argues, in the alternative, that the claims in this case are barred by laches.

> "Laches is defined as such neglect or omission to assert a right as, taken in conjunction with the lapse of time, more or less great, and other circumstances causing prejudice to an adverse party, operates as a bar in a court of equity. The essential element of this equitable defense is delay prejudicial to the opposing party" (*Matter of Schulz v State of New York*, 81 NY2d 336, 348 [1993] [internal quotation marks and ellipsis omitted]; *see also Saratoga County Chamber of Commerce v Pataki*, 100 NY2d 801, 816 [2003]).

■ ■ ■ Initially, as a matter of law, laches cannot bar the State's cause of action. "It is settled that the equitable doctrine of laches may not be interposed as a defense against the State

when acting in a governmental capacity to enforce a public right or protect a public interest" (*Matter of Cortlandt Nursing Home v Axelrod*, 66 NY2d 169, 178 n 2 [1985]). Here, the State is acting in a governmental capacity to protect a public interest, and thus laches does not apply. Moreover, the doctrine of laches has no application when plaintiffs allege a continuing wrong (*see Matter of Burke v Sugarman*, 35 NY2d 39, 45 [1974]), as they do here with respect to the ongoing use of the Western Corner. Finally, Supreme Court did not abuse its discretion in ruling that laches did not apply to the individual plaintiffs' challenge to the proposed use of the Western Corner.

Accordingly, the order of the Appellate Division should be affirmed, with costs.

Chief Judge LIPPMAN and Judges GRAFFEO, READ, SMITH, RIVERA and ABDUS-SALAAM concur.

Order affirmed, with costs.